# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| BEVERLY A. DAWSON, | : | Bankruptcy No. 07-15741DWS |
| aka Beverly A. Dawson-Hall, | : | |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is the Expedited Motion of Debtor Requesting Leave to File a New Bankruptcy Case (the "Motion"). The Motion is filed under the conditions of my Order dated October 29, 2007, i.e., that any such request be made so as to allow a hearing at least twenty days before any scheduled sheriff sale that Debtor will seek to enjoin by filing an eighth bankruptcy petition; and that the Motion shall be accompanied by all documents required to be filed under Bankruptcy Rule 1007(b) as well as a proposed Chapter 13 plan, if applicable which will be served on the Chapter 13 trustee ("Trustee"), mortgagee and any taxing authorities. Exhibit D-1. These conditions have in the main been fulfilled,[1] and a hearing at which Beverly Dawson ("Dawson") testified was held on November 13, 2007.

---

[1] As noted below, Dawson has significant real estate tax obligations to the City of Philadelphia ("City") which were not identified in her proposed schedules. The City was not served with the Motion.

The Motion is opposed by Direct Financial Group, Dawson's mortgagee ("Direct") and the Trustee. For the reasons that follow, the Motion shall be denied.

**BACKGROUND**

Dawson is a veteran having served stateside in the United States Army. She retired twenty years ago with a medical disability which is her sole source of income. In 1986 or 1987, shortly after her retirement, she purchased her residence at 20 N. Dewey Street, Philadelphia, PA (the "Property") for $1 and a commitment to rehabilitate it. She moved in six months to one year later with her children.

In 1997 or 1998 she was approached by a contractor to perform home improvements on the Property, and she was receptive since she needed the work done. She entered a contract for $33,000 of home improvements, and took a mortgage loan from Equicredit to finance the work. She states that she made some payments to Equicredit but was uncertain as to how many were made. She did, however, apply to the Pennsylvania Housing Finance Agency ("PHFA") for a Homeowners's Emergency Mortgage Assistance Program in late October 2006, and the Mortgage Credit Information Sheet which she signed to authorize the release of her credit information, shows a loan origination date of December 17, 1997 and the date of the last full mortgage payment as October 1, 1998. Exhibit C-2.[2] While the chronology is not precise, it appears that Equicredit obtained a judgment in

---

[2] Dawson objects to this document to the extent it contains information that she did not supply. However, Dawson authorized the release of this mortgage credit information to and use by the PHFA in making its decision on her application, and she appears to have seen the data inputted and adopted it. In any event, by her own testimony she made only a limited number of payments in the ten years she has held the mortgage.

mortgage foreclosure and thereafter sold the loan to Direct which has scheduled a sheriff's sale of the Property for December 4, 2007.

Dawson's first Chapter 13 bankruptcy petition was filed on March 6, 2000 and was dismissed shortly thereafter on April 28, 2000 when no documents were filed. Dawson was represented by Robert Blackmon, Esquire. Three short- lived Chapter 13 cases were then filed by James O'Connell, Esquire and apparently handled by Thomas Turner who according to Dawson, never prepared her documents and told her she did not have to appear at her § 341 meeting. While this Court's familiarity with Mr. Turner lends credence to this explanation for her failed cases, a review of the docket provides a more complete picture.[3] To the contrary, bankruptcy case #2 was filed on February 5, 2001 with all the required documents, and the § 341 meeting was held. However, on June 21, 2001 Equicredit was granted relief from stay and a Trustee's motion for lack of payment which soon followed, was granted on August 13, 2001.[4] The two succeeding cases, however, were dismissed: one for documents or one for non-appearance at the § 341 meeting. Case #3 was filed on November 29, 2001 but was dismissed on January 17, 2002 for failure to file the required documents. Case #4 was filed on February 27, 2003 with all required documents but

---

[3] I shall take judicial notice of the docket entries in this case as well as Debtor's prior cases. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

[4] It is not uncommon for some debtors' counsel to advise their clients not to make trustee payments to elicit a trustee's motion to dismiss (i.e., an involuntary dismissal). The debtors are then poised to file a new case (and counsel to collect a new fee) on the eve of the rescheduled foreclosure sale, usually some three or four months later.

dismissed on May 1, 2003 for failure to appear at the § 341 meeting. For case #5, Dawson turned to Daniel L. Weisman, Esq. who successfully shepherded Dawson through a Chapter 7 case filed on April 21, 2005 for which she received a discharge on August 17, 2005.[5] Case #6 was filed by Matthew Reusing Jr. on March 5, 2007 with all documents and an application for "installment payment" of the filing fee.[6] In response and to provide notice, rather than grant the request since it was the sixth case, I ordered that the fee be paid in two weeks. When it was not, I dismissed the case but ordered that any future filing would be accompanied by the full fee and all the required documents or the case would be dismissed without further notice or hearing. Case no. 07-11357, Doc. No. 12.

In violation of my Order, Dawson filed case #7 on October 1, 2007 without the requisite documents through the efforts of Michael Ward, Esquire. Debtor testified that she had visited Direct's offices and learned that a sheriff sale would be conducted the following day, necessitating the quick filing.[7] The case was dismissed on October 29, 2007 with a bar

---

[5] A perusal of the schedules (hand written and sloppy) in that case suggests a questionable benefit to this filing given her problems with non-dischargeable obligations. A disclosure of attorney compensation indicates that for this Dawson paid Weisman $1,850.

[6] As is the particular practice of this attorney, the application proposes to pay the fee in 30 days. This allows the quick filing to stop a sheriff sale without a filing fee and/or retainer for counsel. In this case, Dawson stated that she paid Reusing $600 which is contrary to the attorney disclosure form that he filed. By separate order, I will address this matter as well.

[7] Both Dawson and Ward appeared in response to a show cause order why they should not be sanctioned for violating my Order. Dawson, in what was her characteristic response to failures in her bankruptcy cases, claimed not to understand the restriction. The Order could not be clearer, and I did not find her explanation to be credible. Notwithstanding that conclusion, I still held open the possibility that she could file again with leave of court. Ward claimed not to have noticed the restriction. Since the petition he prepared listed five prior cases, including the one in which the Order was entered and set forth in full on the docket, I find that explanation unpersuasive. I have previously stated that attorneys in serial cases are charged with notice of filing restrictions
(continued...)

on the filing of a further petition without leave of court and the conditions that any request for relief from the bar be satisfied as explained above.

Contemporaneously with this activity in case #7, Dawson applied for the aforementioned PFHA Homeowner's Emergency Mortgage Assistance, the procedures as set forth in Pennsylvania's Act 91, P.S. §§ 1680.401c - 1680.410c, having been triggered after Direct had sent the Act 91 notice on September 15, 2006. Dawson testified that after going to credit counseling, she learned that her application was denied. Accordingly, armed with new counsel, she returned to the bankruptcy court.

In support of the filing of case #8, Dawson proposes a Chapter 13 plan that will pay the Trustee $450 for 50 months. The payment is supported on paper by disposable income of $451, <u>i.e.</u>, monthly veterans' disability benefits of $2,711 less expenses of $2,260. When questioned about her proposed Schedule J, she acknowledged her budgeted expenses were not actual but aspirational. She indicated that her food costs were higher because she had no kitchen and had to purchase all meals for herself and her two children living with her, <u>i.e.</u>, a daughter, age 15 and a son, age 27.[8] She indicated that would change when she secured money to finish the rehabilitation of her house. The proposed plan is

---

(...continued)
in prior cases. <u>In re Bailey</u>, 321 B.R. 169 (Bankr. E.D. Pa. 2005). To the extent an attorney concludes that the pleas of a desperate debtor (<u>i.e.</u>, one with an imminent sheriff's sale) take precedence over an Order of this court, he/she gravely misunderstands an attorney's professional responsibilities. By a companion Order, Ward will be required to disgorge to the Clerk of the Court any funds paid to him by Dawson accompanied by an affidavit acknowledging his responsibility to review the docket (and underlying orders) of any prior case of any debtor requesting a petition be filed.

[8] She has two children at college who have financial aid. However, her 27 year old son is dependent on her as he is and has been unemployed.

not apparently funded to satisfy the arrears on a mortgage that has not been paid since 1999 but rather to raise $25,000 which is the amount that Direct said it would accept on a short sale if paid before the December 4 sheriff sale. Exhibit D- 2.[9] Debtor testified that she could raise those funds through a Veteran's Administration ("VA") grant or family support. When asked what action she had taken to explore these options, her responses were inconsistent but it is clear that she has taken no step to this end.[10] She has no savings.

Her latest counsel claims something new and overlooked by her prior attorneys. She now avers that the mortgage was the outcome of an improper home improvement loan and thus she has significant recoupment claims against Direct. When questioned why she had not filed suit in the ten years since the contract was made, she indicated that when she showed the contract to another contractor, he ripped it up and without the original contract, she could not bring suit. However, without regard to her expectations from the recoupment claim, her plan is still funded at $450 per month.

**DISCUSSION**

The Third Circuit Court of Appeals has held that a chapter 13 case shall be filed in good faith, and that consequently a bad faith filing is cause for dismissal under § 1307(c). In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996). A debtor's history of filings and dismissals is

---

[9] While the record does not reflect the mortgage arrears, Dawson's proposed Schedule A identifies a secured claim of $72,000 on a property valued at $40,000.

[10] She indicated alternatively that her request to the VA required her to go to a non-local VA office and/or to contact Senator Specter's office. She did the latter but there was no follow-up. As to family assistance, she felt they would be burdened to help her and she prefers to handle this without their involvement.

-6-

probative of bad faith. In re Oglesby, 158 B.R. 602 (E.D. Pa. ). In appropriate circumstances where the facts evidence an abuse of the provisions, purposes and spirit of Chapter 13, more than dismissal may be warranted. In re Dami, 172 B.R. 6, 11 (Bankr. E.D. Pa. 1994). In such a case, Bankruptcy Rule 9011, incorporating Fed.R.Civ.P.11 provides the authority for a bar on future filings to the break the cycle of bankruptcy recidivism. Id; In re Jones, 117 B.R. 415, 420 (Bankr. N.D. Ind. 1990). These cases recognize that where a debtor files a petition in bankruptcy with no intention of obtaining the benefits or the goals for which the proceeding was designed or with no intention of pursuing the to its natural conclusion, the Bankruptcy Code is being abused and Bankruptcy Rule 9011 is being violated. Dami, supra. Debtor was subjected to such bar.

    It stands to reason that where a debtor seeks relief from a bar order entered because the court has found, as I did with respect to Dawson, that the prior petitions were not filed with the intention of fulfilling fiduciary duties under the code, rules and orders of this court, the threshold inquiry is whether a new filing will be any different, i.e., contain the requisite good faith. Because the term "good faith" is "incapable of precise definition," the good faith inquiry is a fact intensive determination that is left to the discretion of the bankruptcy court. Lilley, 91 F3d at 496. The good faith of Chapter 13 filings is "assessed on a case-by-case in light of the totality of the circumstances." Id.[11]

---

[11] To assist the bankruptcy court in its review, the following factors were found to be among those relevant to the inquiry:

(continued...)

In the context of serial chapter 13 cases, the focus is on whether the debtor has a likelihood of reorganizing since the prosecution of another fruitless case has no function other than to delay action by creditors under state law.[12] As my colleague Bankruptcy Judge Bruce Fox noted in In re Lee, 2006 WL 3859134, at *5-6 (Bankr. E.D. Pa. Nov. 8, 2006):

> many courts have recognized that it is inappropriate for a debtor to file another bankruptcy reorganization case ...after dismissal of an earlier one, unless there has been a material change of circumstances which demonstrates that the second (or later) reorganization attempt now has a possibility of success after the first had failed.
>
> Therefore, when there are successive reorganization bankruptcy filings without any material changes in circumstances, the repeat filing is generally viewed to be in "bad faith." [citations omitted]

It might be concluded based on Dawson's bankruptcy history, i.e., eight cases running almost continually for seven years, that she would have exhausted her opportunity to enjoy the privilege of Chapter 13 relief. Indeed this case is a textbook example of the misuse of the bankruptcy laws by not only Dawson who has never made a bona fide effort to reorganize her affairs in bankruptcy, but a series of lawyers that were motivated by the misguided notion that delaying the inevitable provides an actual service for which they merit compensation.

---

(...continued)
    the nature of the debt ...; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

Id. quoting In re Love, 957 F.2d 1350, 1357 (7th Cir. 1992). See also Eisen v. Curry (In re Eisen), 14 F.3d 469, 470 (9th Cir. 1994) (quoting In re Goeb), 675 F.2d 1386, 1391 (9th Cir. 1982)) (whether the debtor "'misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner.'")

[12] While a certain amount of delay is attendant to the bankruptcy process, the law's tolerance for it diminishes with repeat filings.

Dawson, who was unable to pay her mortgage for all but a short period of time in 1998, has managed to retain the Property through a combination of creditor inaction and well timed bankruptcy filings. She has been lured by the success of her failed cases in preventing foreclosure to take little to no responsibility for understanding the process, reviewing her documents for accuracy or complying with orders of this court. However, because this conduct has been facilitated by members of the bar, I am giving her the benefit of the doubt while still adhering to the applicable principal that when an individual has filed many failed reorganization cases, the evidence needed to demonstrate a material change in circumstances supporting a reasonable possibility of reorganization grows heavier. Id. at 6. (*citing* In re LeGree, 285 B.R. 615, 620 (Bankr. E.D. Pa. 2002)).

"The kind of 'changed circumstances' required to justify a successive filing must be positive changes" reflecting on the debtor's ability to successfully reorganize under chapter 13." Id. (*quoting* In re Huerta, 137 B.R. 356, 368 (Bankr. C.D. Cal. 1992)). I find none evidenced on this record. Rather this latest proposed case offers more of the same. While purporting to demonstrate the resources to fund a confirmable plan, the schedules are belied by the reality of Dawson's situation. She claims to be able to make a $450 payment to the Trustee and a $490 mortgage payment to Direct each month, neither of which amounts has she been paying for the 7-1/2 years she has been in and out of the bankruptcy system. She acknowledges having failed to pay real estate taxes but has not either scheduled the claim nor provided for it in the proposed plan, and real estate taxes are a lien on the Property. Her income has been essentially the same with small increases presumably for cost of living for the last three years, Exhibit D-3 (proposed Statement of Financial Affairs), and

-9-

notwithstanding the fact she has not paid a mortgage, the real estate taxes or the Trustee, she has no savings. Where is she supposed to find an additional $900 per month to perform a Chapter 13 case, other than on a piece of paper drafted by her attorney to reach that bottom line. Questioning her as to the past disposition of this alleged excess income provided no clue. Her response to what happened to the money, was that she spent it. This is but one example of testimony that refuted her contention that she was now able to propose a confirmable plan. Nor did I find her attempted justification for past breaches credible. Indeed while disclaiming her own abilities to grasp the intricacies of the bankruptcy process, her responses seemed more evasive than unintelligent.

Because I find no basis to conclude that Debtor will have the money she proposes to pay her mortgage and the Trustee, the contemplated consumer action is not dispositive of this contested matter. Without regard to Dawson's explanation of why she has taken no steps to date to pursue that action, I am sympathetic to the alleged circumstances which gave rise to the mortgage obligation. It is regrettable if valid claims were lost with the passage of time and recoupment is her only potential remedy at this point. However, the claims without more are a weak hook on which to hang a new case.

In short, I find no change of circumstance but merely an imminent sheriff sale animating this Motion. Her income and expenses are essentially static. The additional resources she claims would be available to her, i.e., a VA grant[13] and/or family assistance, have never been explored and are thus totally speculative. Her proposed Schedules which

---

[13] Indeed her testimony was inconsistent as she stated at one point that she would be seeking VA funding to conclude the repairs on her home and at another point that the funds could be secured to pay Direct.

were required as a condition to pursuing the Motion are materially inaccurate, failing to disclose and to provide for real estate taxes not paid for many years and admittedly misrepresenting her expenses. Finally the sincerity of this proposed bankruptcy case is undermined by its illogical economic premise. Even assuming Debtor's unwarranted assumption that she has only to pay $25,000 to reinstate her mortgage, she would be paying $900 per month to retain a house that is in such bad condition that she is forced to eat out every meal with her family and as to which she has no equity. See n.9 supra. Query why she would not take the $900 per month to rent habitable housing? The answer is that she does not have the funds.

For the foregoing reasons, the Motion is denied. An Order consistent with this Memorandum Opinion shall be entered.

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated:  November 20, 2007

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| BEVERLY A. DAWSON, | : | Bankruptcy No. 07-15741DWS |
| aka Beverly A. Dawson-Hall, | : | |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 20th day of November 2007, upon consideration of the Expedited Motion of the Debtor, Beverly A. Dawson ("Dawson") Requesting Leave to File a New Bankruptcy Case (the "Motion"), after notice and hearing, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED and DECREED** that the Motion is **DENIED**;

**And** it is **Further ORDERED** that on or before **December 10, 2007**, Michael Ward, Esquire shall file an affidavit (1) acknowledging his duty under Bankruptcy Rule 9011 to review the docket and underlying orders in serial cases and (2) stating the amount, if any, of the fees paid to him by Dawson for filing this case; any fees so paid shall be disgorged to the Clerk;

**And** it is also **Further ORDERED** that Matthew J. Reusing, Jr., Esquire shall appear at a hearing to be held on **December 10, 2007 at 9:30 a.m.** in the Robert N.C. Nix, Sr.

Federal Courthouse, 2nd floor, 900 Market Street, Courtroom #3, Philadelphia, PA to respond to Dawson's contention that he was paid $600 by Dawson which amount was not applied to filing fees or disclosed as an attorneys' fee for case 07-11357. Debtor and the United States trustee are invited to appear at the hearing.

                                            DIANE WEISS SIGMUND
                                            Chief U.S. Bankruptcy Judge